[No. B124150. Second Dist., Div. Five. Aug. 14, 1998.]

In re MARK ANTHONY CARR on Habeas Corpus.

COUNSEL

Michael P. Judge, Albert J. Menaster, Jeri Polen, Alex Ricciardulli, Deputy Public Defenders, for Petitioner.

Gil Garcetti, District Attorney, Robert P. Heflin, Chief Deputy District Attorney, George M. Palmer, Head Deputy District Attorney, Patrick D. Moran and Natasha S. Cooper, Deputy District Attorneys, for Respondent.

OPINION

**TURNER, P. J.—**

## I. Introduction

Defendant, Mark Anthony Carr, has filed a habeas corpus petition challenging the award of presentence conduct credits he received in a case where

he was placed on probation. Purportedly pursuant to Penal Code[1] section 2933.1, defendant was awarded only 15 percent conduct credits against the time actually spent in custody. We conclude that the 15 percent limitation on preprobation and sentence conduct credits in section 2933.1 is inapplicable when the accused is placed on probation. We therefore issue our writ of habeas corpus.

## II. Factual and Procedural Background

Defendant was charged with one count of lewd conduct with a child under the age of fourteen in violation of section 288, subdivision (a). On June 3, 1998, defendant pled no contest pursuant to a plea bargain and was placed on probation for five years. One of the terms of probation required that defendant spend one year in the county jail. He was given credit for 172 days served in custody prior to the probation and sentence hearing. However, over the objection of defense counsel, the trial court, acting pursuant to section 2933.1, awarded defendant only 15 percent presentence conduct credits as measured against the time actually spent in the county jail prior to the probation and sentence hearing. Defense counsel contended that presentence conduct credits should be calculated pursuant to section 4019. Under defense counsel's calculation, defendant should have received 86 days of presentence conduct credits.

On July 28, 1998, defendant filed his habeas corpus petition challenging the award of presentence conduct credits. On the same day, we requested an informal response from the district attorney. The informal response of the district attorney was filed on July 31, 1998. On July 31, 1998, we shortened the time for filing defendant's response as permitted by rule 60 of the California Rules of Court. Defendant's response was filed on August 4, 1998. On August 6, 1998, after consideration of the parties' papers, we issued our order to show cause. We heard oral argument on the petition on August 10, 1998.

## III. Discussion

Subject to limitations not present in this case (e.g., *People v. Bruner* (1995) 9 Cal.4th 1178, 1183-1194 [40 Cal.Rptr.2d 534, 892 P.2d 1277]; *In re Joyner* (1989) 48 Cal.3d 487, 491-495 [256 Cal.Rptr. 785, 769 P.2d 967]; *In re Rojas* (1979) 23 Cal.3d 152, 155-157 [151 Cal.Rptr. 649, 588 P.2d 789]), at the time of the probation and sentence hearing, a defendant is entitled to credit for time served in county jail prior to sentencing. (§ 2900.5, subd. (b).) Section 2900.5, subdivision (a) states in pertinent part, "In all

---

[1] All future statutory references are to the Penal Code.

felony and misdemeanor convictions, either by plea or by verdict, when the defendant has been in custody, including, but not limited to, any time spent in a jail . . . and including days credited to the period of confinement pursuant to Section 4019, shall be credited upon his or her *term of imprisonment . . . .*" (Italics added.) Section 2900.5, subdivision (c) defines the italicized language in subdivision (a) as follows, "For the purposes of this section, 'term of imprisonment' includes any period of imprisonment imposed as a condition of probation or otherwise ordered by a court in . . . suspending the imposition of any sentence . . . ." Section 2900.5 was adopted in 1971 and is a well-established part of California felony sentencing law. (Stats. 1971, ch. 1732, § 2, p. 3686.) The parties do not dispute that probationers are entitled to section 4019 credits. The district attorney argues though that the preprobation and sentence conduct credits in this case must be limited to 15 percent of the time actually spent in custody by reason of the provisions of section 2933.1, subdivision (c).

Section 2933.1 was adopted as urgency legislation effective September 21, 1994. (Stats. 1994, ch. 713.) Section 2933.1, states in its entirety: "(a) Notwithstanding any other law, any person who is convicted of a felony offense listed in Section 667.5 shall accrue no more than 15 percent of worktime credit, as defined in Section 2933. [¶] (b) The 15 percent limitation provided in subdivision (a) shall apply whether the defendant is sentenced under Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2 or sentenced under some other law. However, nothing in subdivision (a) shall affect the requirement of any statute that the defendant serve a specified period of time prior to minimum parole eligibility, nor shall any offender otherwise statutorily ineligible for credit be eligible for credit pursuant to this section. [¶] (c) Notwithstanding Section 4019 or any other provision of law, the maximum credit that may be earned against a period of confinement in, or commitment to, a county jail, industrial farm, or road camp, or a city jail, industrial farm, or road camp, following arrest and prior to placement in the custody of the Director of Corrections, shall not exceed 15 percent of the actual period of confinement for any person specified in subdivision (a). [¶] (d) This section shall only apply to offenses listed in subdivision (a) that are committed on or after the date on which this section becomes operative." Defendant does not dispute that he has been convicted of a violent felony as defined in section 667.5, subdivision (c). He has been convicted of committing a lewd act on a child under the age of 14, which is a violent felony. (§ 667.5, subd. (c)(6); *People* v. *Reed* (1998) 62 Cal.App.4th 593, 595 [72 Cal.Rptr.2d 615]; *People* v. *Caceres* (1997) 52 Cal.App.4th 106, 108 [60 Cal.Rptr.2d 415].) Defendant argues that the 15 percent limitation on section 4019 conduct credits should only apply when the accused is sentenced to prison. Defendant argues that section 2933.1 does not apply when the accused is placed on probation.

■ This is an issue of statutory interpretation. Therefore, we apply the following standards of statutory review described by the California Supreme Court: "When interpreting a statute our primary task is to determine the Legislature's intent. [Citation.] In doing so we turn first to the statutory language, since the words the Legislature chose are the best indicators of its intent." (*Freedom Newspapers, Inc.* v. *Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826 [25 Cal.Rptr.2d 148, 863 P.2d 218]; *People* v. *Jones* (1993) 5 Cal.4th 1142, 1146 [22 Cal.Rptr.2d 753, 857 P.2d 1163].) Further, the California Supreme Court has noted: " 'If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute) . . . .' " (*Delaney* v. *Superior Court* (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934].) However, the literal meaning of a statute must be in accord with its purpose, as the California Supreme Court noted in *Lakin* v. *Watkins Associated Industries* (1993) 6 Cal.4th 644, 658-659 [25 Cal.Rptr.2d 109, 863 P.2d 179] as follows: "We are not prohibited 'from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the [statute] . . . .' " In *Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299], our Supreme Court added: "The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [Citations.] An interpretation that renders related provisions nugatory must be avoided [citation]; each sentence must be read not in isolation but in light of the statutory scheme [citation] . . . ." Of further consequence is the rule of statutory interpretation that chapter and section headings in statutes may be considered in determining legislative intent. The California Supreme Court has held: "However, it is well established that ' "chapter and section headings [of an act] may properly be considered in determining legislative intent" [citation], and are entitled to considerable weight. [Citation.]' [Citations.]" (*People* v. *Hull* (1991) 1 Cal.4th 266, 272 [2 Cal.Rptr.2d 526, 820 P.2d 1036]; accord, *Bowland* v. *Municipal Court* (1976) 18 Cal.3d 479, 489 [134 Cal.Rptr. 630, 556 P.2d 1081]; *People* v. *Navarro* (1972) 7 Cal.3d 248, 273 [102 Cal.Rptr. 137, 497 P.2d 481]; cf. *People* v. *Nichols* (1970) 3 Cal.3d 150, 158 [89 Cal.Rptr. 721, 474 P.2d 673].) ■ Finally, because this case involves a penal statute with two reasonable constructions, defendant is entitled to the one more favorable to him. (*In re Christian S.* (1994) 7 Cal.4th 768, 780 [30 Cal.Rptr.2d 33, 872 P.2d 574]; cf. *People* v. *Ledesma* (1997) 16 Cal.4th 90, 101 [65 Cal.Rptr.2d 610, 939 P.2d 1310].)

Several subdivisions of section 2933.1 are quite obviously not applicable to defendant, a probationer. Section 2933.1, subdivisions (a) and (b) which limit conduct credits refers to section 2933, which applies only to prison conduct credits. (See *People* v. *Aguirre* (1997) 56 Cal.App.4th 1135, 1140 [66 Cal.Rptr.2d 77]; *People* v. *Hill* (1995) 37 Cal.App.4th 220, 225, fn. 3 [44 Cal.Rptr.2d 11].) Section 2933.1, subdivision (d) confines the new limitations on conduct credit to crimes committed after September 21, 1994, the day the statute became effective. The parties are in agreement as to the direct inapplicability of section 2933.1, subdivisions (a), (b), and (d) to this matter.

Therefore, the parties agree that the applicable provision of section 2933.1 which controls the outcome of this case is subdivision (c) which, as already noted, states, "Notwithstanding Section 4019 or any other provision of law, the maximum credit that may be earned against a period of confinement in, or commitment to, a county jail, industrial farm, or road camp, or a city jail, industrial farm, or road camp, following arrest and prior to placement in the custody of the Director of Corrections, shall not exceed 15 percent of the actual period of confinement for any person specified in subdivision (a)." The district attorney contends: "[Defendant's] probationary jail term commitment is following his arrest, and because he has not yet been sentenced to state prison, it is also prior to his placement in the custody of the Director of Corrections. Therefore, [defendant] clearly falls within the plain language of subdivision (c)." (Fn. omitted.) Defendant argues that the language "and prior to placement in the custody of the Department of Corrections. . . ." in section 2933.1, subdivision (c) qualifies the preceding phrase which refers to "a period of confinement in, or commitment to, a county jail . . . ." Defendant argues that the reduction to 15 percent of conduct credits only occurs when an accused is committed to the custody of the Department of Corrections. Both parties contend that the plain language of section 2933.1, subdivision (c) applies to them. However, section 2933.1, subdivision (c) is ambiguous because it is unclear whether the word "and" is intended to describe two separate scenarios where the credits must be reduced, viz. probationary confinement and when the accused is sentenced to prison, or conduct credits can only be reduced when there is a sentence to the state penitentiary.

We begin our analysis by examining the language of section 2933.1, subdivision (c). The Legislature has chosen to use the words "and prior to placement in the custody of the Director of Corrections. . . ." in section 2933.1, subdivision (c). Those words must be given effect. The district attorney's interpretation of section 2933.1, subdivision (c) would render the words "following arrest and prior to placement in the custody of the Director

of Corrections" meaningless. If the Legislature intended that all defendants convicted of a violent felony, even those placed on probation, receive only 15 percent credits then it would not have been necessary for the words "prior to placement in the custody of the Director of Corrections" in section 2933.1, subdivision (c). ■ An interpretation of a law which fails to give effect to every word in the statute is to be avoided. (*California Assn. of Psychology Providers* v. *Rank* (1990) 51 Cal.3d 1, 18 [270 Cal.Rptr. 796, 793 P.2d 2]; *Gay Law Students Assn.* v. *Pacific Tel. & Tel. Co.* (1979) 24 Cal.3d 458, 478 [156 Cal.Rptr. 14, 595 P.2d 592].) ■ The use of the word "and" ordinarily, although not always, implies the conjunctive. (*People* v. *Pool* (1865) 27 Cal. 572, 580-581; *Melamed* v. *City of Long Beach* (1993) 15 Cal.App.4th 70, 78 [18 Cal.Rptr.2d 729].) ■ Had the Legislature used the words "*or prior to placement in the custody of the Director of Corrections . . . .*" then the position of the district attorney would have greater substance. ■ The California Supreme Court has held: "In its ordinary sense, the function of the word 'or' is to mark an alternative such as 'either this or that.' (*Barker Bros., Inc.* v. *Los Angeles* [(1938)] 10 Cal.2d 603, 606 [76 P.2d 97] . . . .)" (*Houge* v. *Ford* (1955) 44 Cal.2d 706, 712 [285 P.2d 257].) ■ If "or" were used, then there would in fact be two alternatives—"a period of confinement in, or commitment to, a county jail" or "prior to placement in the custody of the Director of Corrections." However, the Legislature did not write the statute in the disjunctive—it was written in the conjunctive.[2]

Because the statutory language is ambiguous, it is proper to review appropriate documents prepared during the legislative process. (*Williams* v. *Garcetti* (1993) 5 Cal.4th 561, 569 [20 Cal.Rptr.2d 341, 853 P.2d 507]; *California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698-702 [170 Cal.Rptr. 817, 621 P.2d 856].) Section 2933.1 was originally contained within Assembly Bill No. 113 (1993-1994 Reg. Sess.). As will be noted, the proposed adoption of section 2933.1 was later inserted in Assembly Bill No. 2716 (1993-1994 Reg. Sess.). When Assembly Bill No. 113 was pending, committee reports consistently indicated that new section 2933.1 would apply to defendant committed to state prison. A report prepared for a hearing on May 11, 1993, states: "1) Provides that any person

---

[2]It is noteworthy that the Legislature in enacting section 2933.2 which bans all worktime credit for murderers did not add the language "and prior to placement in the custody of the Director of Corrections" to the statute. Section 2933.2, subdivision (c) states, "Notwithstanding Section 4019 or any other provision of law, no credit pursuant to Section 4019 may be earned against a period of confinement in, or commitment to, a county jail, industrial farm, or road camp, or a city jail, industrial farm, or road camp, following arrest for any person specified in subdivision (a)." Section 2933.2, subdivision (c) is clear—no murderer, even one receiving an extremely unlikely grant of probation, would ever be entitled to presentence conduct credits.

sentenced to state prison for, . . . one or more specified felonies, may accrue no more than 15% worktime credit against their term of imprisonment. [¶ 2) Provides than any person detained in the county jail prior to being sentenced to state prison, under the circumstances described above, may receive a maximum of 15% conduct credit against their state prison sentence." (Assem. Com. on Public Safety, Rep. on Assem. Bill No. 113 (1993-1994 Reg. Sess.) May 11, 1993, p. 1.) Paragraph two of the quoted portion adverts to paragraph one which refers only to imprisonment. Other Assembly and Senate reports contain virtually the same language. (Concurrence in Sen. Amends., analysis of Assem. Bill No. 113 (1993-1994 Reg. Sess.) as amended July 4, 1994, p. 1; Off. of Sen. Floor Analyses, as amended July 4, 1994 (1993-1994 Reg. Sess.) Feb. 1, 1994, p. 1; Off. of Sen. Floor Analyses, analysis of Assem. Bill No. 113 (1993-1994 Reg. Sess.) Jan. 4, 1994, p. 1; Off. of Sen. Floor Analyses, analysis of Assem. Bill No. 113 (1993-1994 Reg. Sess.) Aug. 16, 1993, p. 1; Off. of Sen. Floor Analyses, analysis of Assem. Bill No. 113 (1993-1994 Reg. Sess.) June 10, 1993, pp. 1-2); Assem. Com. on Public Safety, analysis of Assem. Bill No. 113 (1993-1994 Reg. Sess.) June 2, 1993, p. 1.); Assem. 3d reading, analysis Assem. Bill No. 113 (1993-1994 Reg. Sess.) June 10, 1993, p. 1.)

As noted previously, the language in Assembly Bill No. 113 was placed in Assembly Bill No. 2716. The Office of Senate Floor Analyses reported as follows concerning Assembly Bill No. 2716: "The 7/6/94 amendments deleted the subject matter of this bill dealing with the Educational Revenue Augmentation Fund. [¶ This new language is the identical language in AB 113 (Katz) that was converted to a budget trailer bill on 5/6/94. The present language dealing with worktime credits passed the Assembly and Senate Judiciary Committee in AB 113." (Off. of Sen. Floor Analyses, analysis of Assem. Bill No. 113 (1993-1994 Reg. Sess.) Aug. 9, 1994.) The report further stated: "Existing law provides that inmates who participate in full-time work or education programs receive time credits of 50 percent. Inmates housed in reception centers and inmates awaiting a full-time work or education slot receive 33 percent credit. [¶ All determinatively sentenced inmates are eligible for these credits, except those convicted of specified violent offenses who have served two or more prison terms for specified violent offenses and inmates under institutional disciplinary action. [¶ This bill would provide that any person who is convicted of a violent felony, as defined, shall accrue no more than 15% of worktime credit, as defined. [¶ This bill also would provide that, whenever any person who is subject to the 15% worktime credit limitation, the maximum credit that may be earned against a period of confinement in, or commitment to, those facilities, following arrest and prior to placement in the custody of the Director of

Corrections, shall not exceed 15% of the actual period of confinement. [¶] This bill would limit worktime credits to 15% for any person convicted of a violent felony." (*Ibid.*) No doubt, the last quoted sentence is entirely consistent with the position of the district attorney that section 2933.1 applies in all circumstances, even when a felon convicted of a violent felony is placed on probation. However, Assembly Bill No. 2716 was returned for concurrence in Senate amendments. The report prepared for the full Assembly stated, "The Senate amendments delete the Assembly version of the bill, and instead provide that a person sentenced to state prison for committing a violent felony shall be limited to a maximum sentence credit of 15%." (Bill Analysis, Assem. Bill No. 2716 (1993-1994 Reg. Sess.) Aug. 24, 1994, p. 1.) Later, the text of the report continued: "Existing law provides that inmates who participate in full-time work or education programs receive time credits of 50%. Inmates housed in reception centers and inmates awaiting a full-time work or education slot receive 33% credit. [¶] All determinatively sentenced inmates are eligible for these credits, except those convicted of specified violent offenses who have served two or more prison terms for specified violent offenses and inmates under institutional disciplinary action. [¶] This bill would limit worktime credits to 15% for any person convicted of a violent felony." (*Ibid.*) As can be noted, this latter discussion was in the context of sentenced prisoners only. The committee reports largely support defendant's position. One thing is certain, no committee report directly addressed the issue before us—does a probationer convicted of a violent felony receive only 15 percent of earned credits? The district attorney can cite to no language which supports such a precise contention. No committee report addresses the issue of probationers and the 15 percent limitation. In fact the word "probation" does not appear in any committee report.

Additionally, the Legislative Counsel's Digest is consistent with defendant's position. The Legislative Counsel's Digest for Assembly Bill No. 2716 as chaptered states in pertinent part: "(1) Existing law provides that every person convicted of any specified felony offense, who has been previously convicted 2 or more times, on charges separately brought and tried, and who has previously served 2 or more separate prior prison terms, as defined, for any of those specified felony offenses shall be ineligible to earn credit on their terms of imprisonment. [¶] This bill would provide, among other things, that notwithstanding any other law, any person who is convicted of a violent felony, as defined, shall accrue no more than 15% of worktime credit, as defined. [¶] (2) Existing law provides that a prisoner confined in or committed to a county jail, industrial farm, or road camp, or any city jail, industrial farm, or road camp is entitled to reduction in the time served for good behavior and for performance in work. [¶] This bill also would provide

that whenever any person who is subject to the 15% worktime credit limitation described in (1) above, the maximum credit that may be earned against a period of confinement in, or commitment to, those facilities, following arrest and prior to placement in the custody of the Director of Corrections, shall not exceed 15% of the actual period of confinement." (Legis. Counsel's Dig., Assem. Bill No. 2716 (1993-1994 Reg. Sess.) Stats. 1994, ch. 713.)

Of further relevance in terms of the Legislature's intent was Governor Wilson's letter when he signed Assembly Bill No. 2716. ■ A governor's written memoranda issued upon signature of a bill is admissible on the issue of the Legislature's intent. (*People* v. *Ledesma, supra,* 16 Cal.4th at p. 100 [signature message]; *People* v. *Tanner* (1979) 24 Cal.3d 514, 520 [156 Cal.Rptr. 450, 596 P.2d 328] [press release]; see *Legislature* v. *Reinecke* (1972) 6 Cal.3d 595, 598 [99 Cal.Rptr. 481, 492 P.2d 385] [". . . we urge the Legislature and the Governor, in the exercise of their shared legislative power to enact laws"]; *Lukens* v. *Nye* (1909) 156 Cal. 498, 503 [105 P. 593] [Governor is participating in the Legislative process when bills are considered and signed].) ■ In the present case, Governor Pete Wilson wrote the Legislature explaining why he was signing Assembly Bill No. 2716 and noted: "I have signed this date Assembly Bill No. 2716. [¶] This bill would limit to 15% the credit inmates in state prison or local custody could earn to reduce their prison sentences for violent crimes." (Governor Wilson, Letter to Leg., re: Stats. 1994, ch. 713.)

Finally, section 2933.1 is part of article 2.5 of part 3, title 1, chapter 7 of the Penal Code. Article 2.5 is entitled "Credit on Term of Imprisonment." As noted previously, such headings are in the words of the California Supreme Court entitled to "considerable weight." (*People* v. *Hull, supra,* 1 Cal.4th at p. 272; *Bowland* v. *Municipal Court, supra,* 18 Cal.3d at p. 489.) Although not conclusive, the placement of section 2933.1 in article 2.5, which is addressed to imprisonment, not probation, is evidence that probationers were not to be subject to the 15 percent limitation on preprobation and sentence hearing conduct credits.

To sum up, as is the case in many situations, the evidence concerning legislative intent is in conflict. (*In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 590-591 [128 Cal.Rptr. 427, 546 P.2d 1371]; *Union Bank* v. *Superior Court* (1995) 31 Cal.App.4th 573, 891, fn. 9 [37 Cal.Rptr.2d 653].) However, most of the evidence indicates the Legislature did not intend to have probationers subject to the 15 percent limitation. The Legislature used the phrase "following arrest and prior to placement in the custody of the Director of Corrections" which reasonably can be construed to read that the

15 percent limitation on presentence conduct credits applied to state prisoners. The Legislature also used the conjunctive "and" which must be given effect under traditional statutory interpretation rules. (*California Assn. of Psychology Providers* v. *Rank, supra,* 51 Cal.3d at p. 18; *Gay Law Students Assn.* v. *Pacific Tel. & Tel. Co., supra,* 24 Cal.3d at p. 478.) Further, the legislative committee reports strongly preponderate toward defendant's theory of statutory interpretation. No committee report states with any specificity at all that probationers were expected to be subject to the 15 percent limitation. Governor Wilson's signature message explicitly stated that state prisoners were to be subject to the 15 percent limitation on presentence section 4019 conduct credits. Finally, section 2933.1 is located in an article in the Penal Code entitled, "Credit on Term of Imprisonment." Based on this evidence we conclude defendant, who has been placed on probation, is entitled to a full award of preprobation and sentence hearing conduct credits. Moreover, defendant posits a reasonable construction of section 2933.1, subdivision (c). Under these circumstances, defendant is entitled to the benefit of the interpretation favorable to him. (*In re Christian S., supra,* 7 Cal.4th at p. 780; *People* v. *Stuart* (1956) 47 Cal.2d 167, 175 [302 P.2d 5, 55 A.L.R.2d 705]; 1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) § 28, pp. 37-38.)

The petition is granted. Within 10 days of filing date of this opinion, the respondent court is to set aside its order applying Penal Code section 2933.1 to defendant. The respondent court is to issue a new order granting defendant credits in compliance with Penal Code sections 2900.5, subdivision (b) and 4019.

Armstrong, J., and Godoy Perez, J., concurred.